Judge Marshall
delivered the Opinion of the Court.
First. The first question to be decided in this case, is whether the Chancellor erred in retaining the case, so far as it relates to the distribution of the estate of Robert Breckinridge, junior, and in decreeing finally as to that part which relates to the estate of William Breck-inridge.
We are of opinion that he did not. Because, as to Robert’s estate, there was a litigation in another Court, the termination of which might leave nothing to be distributed. And although the estate of William, who was a distributee of Robert, might be increased or diminished according to the result of that litigation, yet as 'there was a portion of it which could not be affected, so far as the right of distribution was concerned, by any condition of Robert’s estate, there is. no principle which forbids the distribution of such independent portion, until the decision of other matters which cannot affect it. An administrator who has a thousand dollars *457 in his hands, on which there is no claim but that of the distributees, would not be permitted to retain that, because he has a second thousand dollars which may be drawn from him by a pending suit; nor because he has a suit pending by which he may gain another sum. The connection between the two estates, and the fact that one administrator represented both, is a sufficient ground for asking an account and distribution of both in one suit. There was no error, therefore, in going onto ascertain and distribute so much of William’s estate as was independent of that of 'Robert.
Where estates are connected — ■ as where one of “the decedents was a distributee of another — and the same person is adm’r of both, distributees entitled to a portion of each of the es-tutes, may unite both claims in the same bill, against the adm’r.
An adm’r may avail himself of any funds in his hands to which a distributee, (or the representative of a deceased dis tributee,) is entitled, to satisfy, by retainer or set off, any debt due from such distrib utee to him, either individually °f Another °el tate-
•&., who is an adm’r, has a demand in his own right, against a deceased distrib-utee; before there was any administration on the distributee’s estate, A. had obtained a decree against his heirs: they are necessary parties to a suit, for distribution, brought by the subsequently appointed adm’r of the distributee, and in which A. being a party, asserts his right of set-off. But, though the heirs have not been made parties, the cross bill for set-off should not be dismissed, for that cause, at the hearing of one branch of the case, when there is a part retained in which they might properly be made parties.
But as James D. Breckinridge, the administrator of Robert and William, sets up, in his individual right, a claim against Robert’s estate, which, to a great extent at least, seems prima facie valid, and as, in his character of administrator of Robert, he has a decree against the representatives of George R. 0. Floyd, deceased, in whose right the distribution of both estates is sought; and as he prays that, through this decree, his individual claim against Robert may be satisfied out of the distributive share of G.' R. C. Floyd in the estate of William, if there be any — we are of opinion that, so far as his claim against Robert is valid, and if the decree against Floyd’s representatives remain unreversed, he has an equitable right to pay himself, or to retain the amount of his claim out of the distributive share, or any other money of said Floyd, which may be in his hands, in any character; and especially, as he alleges that Floyd died insolvent. And, as his individual demands appear now to be valid, and the validity of the decree was the question involved in the litigation above referred to, it seems to us that, upon ascertaining the distributive share of .the complainant’s intestate in J. D. Breckinridge’s hands, he should have been permitted to retain, with or without security, or should have had security for the repayment, if necessary, of so much as might be requisite to satisfy the decree aforesaid, until the validity, or invalidity, of that decree should be determined. And, inde *458 •pendently of any individual demand on his part, against the estate of R. Breckinridge, junior, he has a right, as administrator of that estate, to ask that any demand existing in its favor against the estate of G. R. C. Floyd, may be satisfied out of the distributive share of said Floyd in the estate of William Breckinridge, if, as alleged, there are no other means of satisfaction. The Chancellor, therefore, erred in decreeing absolutely the payment of the distributive share of G. R. C. Floyd to the complainant.
Children born after their father’s will was made, and pretermitted, •take the same shares oUaiS'ési tate that they would have taken had there-, been no will.
*458 It is true, the heirs of G. R. C. Floyd, against whom, for want of an administrator, the said decree was revived, ought to have been, and ought still to be, parties to J. D. Breckinridge’s prayer for setting off said decree against the distributive share of Floyd. But the decree is essentially a charge against the personal estate, and against the administrator appointed since it was revived, and who is the sole complainant in this suit. And although if, upon final hearing of the whole case, the heirs should not be made parties, the cross bill of Breckinridge, as to this matter, might be dismissed, without prejudice, still, as the case, so far as it related to the estate of Robert Breckinridge, was retained, and ■as this claim of set-off was embraced in that part of the •case, the cross bill should not have been regarded as it ■might be on a final hearing; the means should have been reserved for satisfying the claim, if, upon final •hearing of that part of the case, it should appear just, and the decree should remain undisturbed;
Second. Passing from this part of the case to that embraced by the Chancellor’s decree, the great questions are — what personal estate of William Breckin-ridge came, or ought to have come, to the hands of James D. Breckinridge, as his administrator? and what is the extent of his present liability? And these questions involve several points which we shall proceed summarily to decide.
1. William Breckinridge having been bom after the date of his father’s will, and having been wholly pretermitted and unprovided for, was entitled under the statute (Statute Law, 1540,) to the same portion *459 of his father’s estate that would have descended to him if there had been no will; which, as there were four heirs, was one fourth. As one of the six heirs of his mother, Jane Breckinridge, who died intestate, he was entitled to one sixth part of her estate. By the deed of 1817, executed by J. D. Breckinridge, as trustee for William, then a minor, and under the authority of an act of Assembly, approved February 3d, 1817, the entire interest of William in the real estate derived, either from his father or mother, (except his interest in a tract of land called the Lynch plantation,) was conveyed to Robert Breckinridge, senior, for the consideration of nine hundred and one dollars, ninety two and a half cents, paid at and before the date of the deed, and forty dollars per acre for William’s interest in the-Woodville tract of land, said, in the deed, to be secured to be paid on time, when his interest should be ascertained, and possession thereof obtained; and for the consideration of one thousand dollars, for his interest in all other lands derived from his father or mother, secured also-to be paid on time. We need only say further of this, deed, that the forty dollars per acre for the interest in-the Woodville tract, and the one thousand dollars for' the interest in all other lands, were additional considerations, afterwards to be paid, and not including the sum-paid at and before the date of the deed. The deed of 1819, executed by William Breckinridge, after he attained full age, so far as it purports to convey the real estate derived from his father and mother and the rents and profits thereof, is but a confirmation of the previous deed. So far as it conveys his interest in the personal estate, it is a new grant, having for its consideration only the sum of seven hundred and ninety five dollars, stated to have been paid after the date of the first deed. Regarding this sum as the consideration for the transfer of the personalty, the deed, as to that, may be supported. Otherwise its validity would be subject to strong objections. It cannot, therefore, be considered as a payment of any part of the consideration ■ for the real estate which remained unpaid at the date of the first deed. -
A party executes* a deed by which he confirms a eon veyance of his lands made, daring his minority, by his trustee, & by which he also acknowledges the receipt of §795, and conveys all his personalty : the new consideration (the 795 dollars) will uphold the deed, though it would otherwise be sub. ject to strong objections; and the personalty being thereby conveyed, the §795 can not be deemed a payment on account of their land-
Sale of an undivided fourth of a tract of land at ¡¡¡¡40 per acre, on credit, how long does not appear, but not payable till the purchaser got possession ; upon a division of the tract, less than a fourth was allotted to him; but, (upon the presumption that the deficiency in the quantity was made up in quality) he is held liable for theam’t of a full fourth at the stipulated rate; and, in the absence of the notes forthe price (if any,) for interest from the time when he got possession.
Sale of a minor’s land, for a sum, of which $1000 was due when he died; and no allegation of its payment, except that the purchaser, and his ex’r, had contributed to the support of the minor: — the support considered equivalent to the interest on the $1000, leav-the principal due. The brother of' an infant, being his trustee with authority to sell his lands, s.old them on credit for a large sum. The infant, after he came of age, confirmed the Sale, and soon after died — most of the purchase money remaining unpaid. His bro ther, the trustee, was appointed his adm’r. Soon after the death of the infant, one of his distributees died, and there was no adm’r of his estate for ma ny years, and his heirs were infants. Finally, the purchaser of the land died, & the brother of the infant who had his land, & was his adm’r, became also ex’or ofthepuichasei. —After all this, an(j some ejgi,. teen years after the sale of the land, an administrator ol* the said distributee was qualified; who forthwith filed a bill for an account and distribution, and. to recover his intestate’s share of the proceeds of the land:—
*460 2. By these two deeds, the whole estate of William Breckinridge was converted into a demand against Robert Breckinridge, for forty dollars per acre for his interest in the Woodville tract, payable on time, after it should be ascertained and possession delivered, and one thousand dollars for his interest in other lands, payable on time,, without any -regard to the ascertainment of quantity, or the delivery of possession, or any other contingency.
3. The Woodville tract consisted of twelve hundred and sixty seven acres, of which three hundred and nine acres, being one fourth part in value, though not quite one fourth in quantity, were delivered to R. Breckin-ridge, senior, in consequence of his purchase from William, on the 2d of September, 1823, under a decree in a suit for partition and distribution, brought by J. D. Breckinridge against the administrator and heirs of his mother, Jane Breckinridge. We are of opinion that the sum payable for this fourth part, should be estimated as if the fourth allotted to R. Breckinridge, senior, had been precisely one fourth part in quantity of the whole tract, which would be three hundred and sixteen and three quarter acres. For this quantity, then, he was bound to pay forty dollars an acre, in such time after the 2d of September, 1823, as had been stipulated in the bonds by which the payment had been secured. And, in the absence of such bonds, he may be presumed to have been chargeable with interest from the time he obtained possession.
Before this decree of partition, William Breckinridge had died, intestate, and J. D. Breckinridge had become his administrator. So that no part of the price of his interest in the Woodville tract was due or payable in his lifetime. And, although it may be presumed that the sum of one thousand dollars, the price of his interest in other tracts, was payable some time before his death, there is no allegation that any part of it was paid, except in the general statement that he had been supported, and his few debts paid, either by R. Breckin-ridge or J. D. Breckinridge. This may be assumed to have discharged the interest on the sum of one thou *461 sand dollars, due before his death; leaving that sum, in addition to the price of one fourth of the Woodville tract, with interest on the aggregate amount from the 2d of September, 1823, certainly payable to J. D. Breck-inridge, as the administrator of William.
Held, that the deft, who was sued in his own light, and as adm’r of his brother, whose ].and he had sold, and as executor of (his uncle) the purchaser, cannot avail himself of the length of time as a defence to the suit.
Five years (or twelve) will not bar the bill of a distributee against an administrator, for an account and distribution.
If no notes or bonds were taken for the consideration, upon the sale of the land, and the vendor’s adm’r permitted the demand to be barred by time, he is personally responsible for it.
Under the circumstances of the case — the terms of sale recited in the deed, it is presumed* that bonds or notes were taken, which ought to have been preserved by the trustee who made.the sale, and was afterwards adm’r of his principal, and no time should bar a suit against him, which would not preclude a recovery upon those notes or bonds.
The defendant is liable for interest on the consideration for the land — whether it be decreed against him in his own right, or as adm’r of his brother, or as ex’or of his uncle, the purchaser; and a decree may properly be rendered against him in the latter character.
4. Of this sum, the representatives of G. R. C. Floyd were entitled to one sixth, as a part of the estate of said George, who was the half brother of said William. John Floyd, also a half brother, was entitled to a sixth. J. D. Breckinridge, a full brother, was entitled to a third; and H. Breckinridge to a third. Of these, John Floyd and H. Breckinridge have received, or at least released, their respective shares, and Robert Breckin-ridge, the debtor, having since died, after making J. D. Breckinridge his executor — the latter, if he has not received his portion of the debt, has it virtually in his own power. So that the enquiry as to payment, need only be made in regard to the one sixth, which was the distributive share of G. R. C. Floyd, who survived William Breckinridge,' but died before the rendition of the decree under which one fourth of the Woodville tract was delivered to R. Breckinridge. Has this debt of R. Breckinridge to the estate of William Breckin-ridge, or the one sixth of it now in question, been paid by R. B. or his representative?
5. Of this there is no pretence; but J. D. Breckin-ridge, who as administrator of William, ought to have collected it before R. B’s. death, and who, as executor , , .... . ., of the latter, ought to have paid it since, sets up m bar *462 of the demand — first, the lapse of time and statute of limitations, and second, several cross demands alleged to exist in favor of R. B’s. estate, against the estate of G. R. C. Floyd.
6. But as the administrator of William Breckinridge, he surely cannot rely upon five years as a bar to the bill of a distributee, for an account and distribution. Less than twelve years had elapsed after the debt for the Woodville tract became due. .Before it became due, G. R. C. Floyd had died, leaving his heirs infants, and it is alleged that some of them remained so at the filing of the bill. No administration was granted on his estate until 1835, in which year this bill was filed. There is no ground for presuming payment, by the administrator of William, or for barring the suit, as against him, on account of lapse of time. And as he has not collected the debt, the existence of which he must have known, he is nevertheless liable for it, even if he has permitted time to bar the demand as against Robert Breckin-ridge’s estate. It is through him the complainant seeks payment; and if he protects the estate of R. B. by the effect of time which he has permitted to elapse without collecting the debt, the consequence is that he must pay it himself. But when it is considered that J. D. Breckinridge, as the trustee of William, sold the land to R. B. who was his security for the faithful performance of the trust, the former being the brother and the latter the uncle of William; and that the deed between these parties, recites that the whole amount payable for the land, was “ secured to be paid on time,” and that J. D. Breckinridge has since become the administrator of William and the executor of Robert, we think it very clear that he cannot be allowed, in either capacity, to rely upon any lapse of time which would not apply to a note or other instrument securing payment of a debt. Can he, or could R. B. say that no written security was given for this large sum, for which the land of their infant ward was sold by one to the other? No writing evidencing even when the payments should be made? and if there were any such, where are they? and who ought to produce or account for *463 them, but he who was the trustee that made the sale, and should have taken the security, and who now represents both the obligee and the obligor?
Bill by the adm'r of a distributee, to recover' his share of the proceeds of the sale of an interest in a tract of land. The deceased dis tributee had formerly had posses sion ofthewhole tract, which he held forlOyears, ending 12 years before this bill was filed ; and the deft, attempts to set up a claim for rents, during that lO.years, as a set-off against the claim for distribution. But it appeárs that in a certain suit for partition, which had been instituted and determined, the claim of the distributee to the whole tract now in question, had been disallowed, and the partition decreed, and that there was, in fact, a claim for rents and profits made in that suit. Held, that the present claim of set-off cannot be allowed: it is unconnected with this suit; was a mere legal right — the remedy probably by-action of trespass, long barred by the statute; and the claim, independent of the statute, may be presumed from the lapse of twelve years, and the acquiescence of all interested, to have been abandoned.
The liability stands on the same grounds as if the payment had been secured by writing now exhibited. And not only is not barred by five or twelve years, but, as interest would be properly chargeable on it, against the debtor, so the complainant, or distributee, has a right to recover interest on his share, whether payment be decreed against J. D. Breckinridge, as administrator of William, or in his own right, (because he has not collected the debt,) or against him as executor of the debtor whose estate is still liable for it. And we have no doubt that, under the circumstances which have been stated, a decree may properly be rendered against him in the latter character.
7. Three counter demands are set up in favor of R. Breckinridge’s estate, against that of G. R. C. Floyd, viz:
First. It appears that G. R. C. Floyd, claiming the entire Woodville tract, under a contract of purchase' from his mother, Mrs. Jane Breckinridge, took possession, on her death, in 1812 or 1813, and retained it until his own death, in June, 1823; and claim is now set up against his administrator, by R. Breckinridge’s executor, for a portion of the rents and profits accruing during that period. But, by the decree of partition of 1823, the title by purchase which G. R. C. Floyd set up in that suit, was wholly disallowed and destroyed, and the title by descent, set up by J. D. Breckinridge, the complainant, was established and carried into complete effect, by decreeing releases among the heirs, or those standing in their places, and by changing the possession where such change was necessary to give effect to the decree. Whether the successful party were enti- *464 tied to have an account of rents, &c. upon this establishment of their title, or upon a mere partition between parceners, if that should be considered as the essential character of the proceeding, was properly a question to be determined in that suit. An account of rents and profits was in fact demanded by the complainant therein; and R. Breckinridge, who answered, as standing in ¡the place of William, and whose title, as his alienee, was exhibited, must be considered as concurring in the prayer of the complainant, and even if he did not expressly concur in the demand of rents, he would have been entitled to a participation in the result of the account, if one had been taken on the prayer of the bill As no such account was ordered, the presumption is, that it was either voluntarily abandoned by the successful parties, or denied by the Court. And in either event, we do not perceive how it can be resuscitated, after the lapse of twelve years, in a suit having no connection, either with that decree, or with the contract under which the party evicted by it had claimed the title and held the possession.
This suit is not brought by the heirs of G. R. C. Floyd to recover back money paid by him, for the alleged purchase of the Woodville tract, from which he or his heirs were evicted; but to recover money which was agreed to be paid for an interest in the title by descent, which was adjudged to be paramount, and under which G. R. C. Floyd, or those claiming under him, were evicted, as to their title claimed by purchase. The claim of rents, as a set-off, is, therefore, not incident to, nor at all connected with the subject of the suit. And even if it were not to be considered as absolutely barred by its denial in the decree of eviction or rescission or partition, as it was not a matter of contract between the successful and unsuccessful parties, any independent remedy which the latter may have had for its recovery, must have been purely at law, and probably by action of trespass; which, if it could ever have been sustained as between the original parties, could not be sustained by the executor of one against the administrator of the other.
A party pnrohas-interest in a tract ofLnd, two undivided portions of which he had theotherfromhis ^ardT'undefan ex’on on ajudg-™ndorSaashSeirof his mother, his land6 was” soldi and purchased by ser, and whotiad the control, and was probably the owner, of the ex> fcul‘on; 1-^h, land descended from the father was not liable to sale for the mother’s debt 2. The purchaser of the land had also purchased of the heir, his right to a portion of his mother’s personal estate, and had received a large sum from that source, which was first liable for her debts, and the purchaser had no right to retain that, and let the land be sold. — The execution purchase, therefore, cannot be used to rebut the claim to a distribu-tee’s share of the purchase money due for the land upon his first purchase_The purchaser having made the second purchase, (at the ex’on sale,) to strengthen his prior title — thereby extinguished so much of the debt, and for which the estate of the deft, in the ex’on is no further liable.
But waiving all these objections, the claim of rents, as an independent demand, is not only liable to be barred by the statute of limitations, but may be rebutted by presumptions arising from lapse of time and other circumstances. And regarding the silence of the decree, not as an absolute bar, but as merely affording a presumption against the claim, strengthened by an acquiescence of twelve years, during which the successful parties, or their alienees, have been in possession of the whole tract under their title by descent — we think that, at the end of that period, when the whole subject may not be so fully understood as it was at the commencement of it, the claim of rents ought not to be allowed as to any part of the land embraced in that decree — whether it was allotted to R. Breckinridge, or to other persons entitled by descent from Mrs. Jane Breck-inridge, and afterwards claimed and held by him, under purchase or other arrangement with them.
The second claim is founded on a judgment obtained by Gwathmey, against the administrator and heirs of Mrs. Jane Breckinridge, under which R. B., about the . , . . ° , TT7. . ... ’ , , time of the partition of the Woodville tract, purchased the part allotted to him in right of William, and perhaps some additional quantity. But it appears that he had the control of the execution, and, as it may be presumed, the proprietorship of it, some time before the decree of 1823, against the administrator and heirs of Mrs. Breckinridge, for partition and distribution; in which decree, he obtained the entire portion of William in the personal estate; which portion was therein estimated at more than four thousand dollars.
The first objection to this claim as a set-off, is that, vtt-.it , . , . .... .. , , William’s interest, as heir to his father, was not liable for the debt of his mother. A second objection is, that, . . , J ’ ’ as K. d. had purchased his interest m the personal es *466 tate of his mother, which was primarily liable for the debt, he has no right, even if William was liable for it, to throw the burthen of that liability upon his portion of the real estate, which he had also purchased: whereby to obtain the whole of William’s distributive share in the personalty, out of which the debt should have been paid, and, at the same time, to relieve himself from paying for the land, under pretence that it was liable for the debt, or under pretence that he had paid the debt. As he not only knew of this debt, but was probably the owner of it when he was calling for an account and settlement of the personalty, and did not then set it up, he cannot now charge it upon William’s interest in the land, even if it were originally liable, and especially, as the amount of the distributive share decreed to him, shows that the personal estate was greatly ..more than sufficient to satisfy all demands. It may be added that, as he chose to appropriate this debt to the ■ confirmation of his title to the land, by purchasing a portion of it under execution for the debt, it is thereby ■ extinguished, and neither he, nor his executor, can now revive it, because he finds that his title under the decree and deed from William, would have been good without such appropriation of it. The release to John Floyd, the administrator of Sirs. Breckinridge, must also have some effect against the allowance of this claim as a set-off.
A party purchased land,on which there had been a levy, creating a ■'lien, of which he '•had a knowledge • at the time of his ■.purchase. Many years afterwards he purchased the same land, when .it was sold under a venditioni ex-ponas upon the formerlevy: held that he must be presumed to have purchased, in the 'first instance,sub ject to the lien, and cannot be permitted to set it up, to reduce the price of his first purchase. •
*466 The third claim of set-off is founded on a judgment, -obtained against Mrs. Jane Breckinridge, in 1805, for twelve hundred and fifty pounds, with interest from 1802. It appears that, in 1810, Mrs. B. — perhaps in order to defeat the purchase of G. R. C. Floyd, which she alleged to be unfair — gave up the Woodville tract to the sheriff, to be sold for this judgment. After her death, an attempt -seems to have been made to revive the judgment, and on failure of that attempt, a venditioni exponas was applied for, and ordered by the Court: under which, in November, 1823, after the decree of partition, and after J. D. Breckinridge had obtained from John Floyd, who held the interests of himself and G. R. C. Floyd and H. Breckinridge and Robert Breckin- *467 ridge, junior — all equal heirs of Mrs. Jane Breckinridge, in the Woodville tract — a conveyance of all of said tract (except the one fourth allotted to R. Breckinridge, senior, in right of William, and the one fifth of the residue allotted to J. D. Breckinridge,) R. B. senior, caused the Woodville tract to be sold, and became the purchaser, for about four thousand five hundred dollars, which was less than half of the debt.
A. who was one-! s0lT&Pconveyed his interest in the land to B. An-terwards, upon a l?]11/0/ Petition one of the parce- and his vendee being denied or fánd wídivided-into five parts, decreedj&Cmade by #c- confirming titles, in-dudingthewhole tract, to the owners of the interests of thecae parceners. In the present suit (instituted after A. andB. were both dead,) the liability of B. to pay for his purchase from A., of which he seems to have-been thus ousted, is made a question. But it appears that.'B. had acquired title to the residue of the land, and the possession of the whole; but had never made-any purchase that included the interest of A. but that made from him — which interest should be restored to A.’s heirs, if B.’s estate is-relieved-from the payment of the purchase money, as a rescission of the contract is a necessary consequence of exempting B.’s estate from the payment. ButB. seems never to have considered himself as divested of that interest, but he and those holding, under him, have retained both title and possession; and the court think that, as the case now stands, B.’s estate should pay the purchase money to A.’s adm’r, with interest upon it.— But as B., in obedience to the decree of partition, executed a release, by virtue of which the heirs of A. may have become invested with some title to the land, which they should release to the present holders of B.’s title, before his estate should be subjected to the payment, those heirs are necessary parties to this- controversy.
All the reasons above given, for not allowing the last named set-off, are equally applicable to this, if this claim be considered as a mere money demand, without particular lien. And if the written endorsement of Mrs. Breckinridge, on the execution, be considered as giving a lien on the land which continued after her death: then asR. B. had this lien, and knew of it when he purchased William’s interest in the land, he roust be presumed to have purchased subject to the lien, and-therefore, can never afterwards be permitted to set it up to diminish the contract price of the land.
8. There is, therefore, no ground for allowing either of these claims as a set-off, either against the sum-of one thousand dollars due for the interest of William in , T,r , i • , other lands than the Woodville tract;, or the price due for his interest of one fourth of that tract, as heir of his father; or the price which may be due for his interest of one sixth in the residue of that tract as heir to his mother, if there ever was any thing due on account of that interest. If there ever was any- thing due on that account, it stands substantially on the same ground as the other — unpaid, unaffected by lapse of time, or the statute of limitations, or any claim of set-off by R. B’s. . , . ,, r ■ i, , ,, exeCUtor; and one sixth of it is payable to the com *468 plainant, as the distributive share of G. R. C. Floyd, with interest from the 5th day of November, 1823, when R. B. obtained possession of the whole of the Woodville tract, and therefore, of the one sixth of three fourths thereof, which William had inherited as heir to his mother.
9. The enquiry whether any thing ever was due for this part of William’s interest, has been reserved for separate consideration, because that enquiry is involved in some difficulty arising from the decree of partition and the proceedings under it, which were obtained by J. D. and R. Breckinridge, in the form devised by them, and without the agency of the heirs of G. R. C. Floyd, who were then infants, not served with process, or of John Floyd, who was a non-resident, and had never answered or appeared in the cause.
By that decree, the residue of the Woodville tract, after allotting one fourth thereof to R. B., senior, in right of William, as heir to his father, was divided into five, when, as there were six heirs of Mrs. Jane Breckin-ridge, it should have been divided into six, equal parts. One of these five parts was allotted to J. D. Breckin-ridge, and the other four were directed to be released to John Floyd and the heirs of G. R. C. Floyd; which was done by a deed, executed by the two Breckin-ridges, releasing the interest of J. D. Breckinridge, as heir to his mother, and that of R. Breckinridge, senior, as acquired from William, in and to the remaining four fifths of the tract.
It is unnecessary to enquire, and would perhaps be difficult to ascertain, the precise basis on which this decree was founded. It is now contended that it should operate as a denial of William’s interest, as heir to his mother, and should, therefore, relieve R. Breckinridge from so much of his contract as related-to that interest. Perhaps it was intended, either by its own force, or in conjunction with the proceedings under the two executions above mentioned, to extinguish William’s interest. But this it could not do. And if it should be considered as an. effectual denial of his interest to R. Breckin-ridge, the purchaser, and is obligatory upon the infanf *469 heirs of G. R. C. Floyd, who were nominal parties to it, and should operate to relieve R. Breckinridge, senior, from the contract, the consequence, of course, would be, that the representatives of the other party would be relieved from it also, and should have the title, as heirs of William, the vendor. The title of William was expressly excepted from the warranty in the conveyance from George R. C. Floyd to John Floyd, and in that of the latter to J. D. Breckinridge, who conveyed to Robert Breckinridge without warranty.
We should be inclined to the opinion that the interest of the heirs, of G. R. C. Floyd, in the title of William, thus coming to them by rescission of William’s conveyance, would not be barred by these deeds, nor transferred by operation of law to John Floyd, or his alienees. But whether this be so or not, and whether the decree be considered as a rescission of the contract, or as an eviction of R. Breckinridge, from the interest of William, as heir to his mother, or not: it is evident, from the pleadings and exhibits, that R. Breckinridge did not, in fact, consider himself as entirely divested of all interest in the title of William, by the decree; but that such interest was regarded as still subsisting, when, by a general arrangement and compromise between him and J. D. Breckinridge and John Floyd, the decrees for money against Floyd were released; and for this and other considerations, Floyd conveyed the remaining four fifths of three fourths of the Woodville tract to J. D. Breckinridge, expressly excepting from the warranty, the title of the heirs or assigns of William. The inference is, that that title was not conveyed by this deed, nor paid for by J. D. Breckinridge in receiving it; nor by R. Breckinridge when he bought from J. D. Breck-inridge. And as, in consequence of these deeds, R. B. got possession of the whole tract, he must, in this view of the case, be considered as getting it, either in virtue of his purchase of William’s title, so far as that title extended, or as getting and holding it without title.
But if he did not get possession expressly in virtue of his ownership of William’s title, and if that title was considered as standing in the heirs of William, still, as *470 he has got possession under an express recognition of that title, which is certainly paramount as far as it goes, and as he is the alienee by deed of that title, and as, moreover, if there was any eviction, or denial of that title, in the decree, it was by his neglect or connivance, without any adjudication against it, as appears, and when the heirs of Floyd were infants, and not served with process, nor properly represented in Court, though it be technically true, that they are bound by the decree till reversed — he could not be permitted to hold the land virtually under William’s title, which is paramount, and yet refuse to pay the purchase money •on the ground that the decree thus rendered was an •eviction as to that title.
Were it not, therefore, that, by the decree and the ¡release of Robert and James D. Breckinridge to the ¡heirs of George K. C. Floyd, the latter may have been invested with some interest in the title of William, we should have no doubt that, in this suit as it now stands, the executor of R. Breckinridge might properly be decreed to pay the one sixth of the contract price of William’s interest, as heir to his mother. But, as he ought not to be decreed to make that payment, while any portion of the interest in William’s title may remain in the heirs of G. R. C. Floyd, or without a re-conveyance or release from them to the person entitled under R. Breckinridge’s will, or by descent from him— there could not properly be a decree as to this part of the purchase money, under the deed from William, until the heirs of G. R. C. Floyd were before the Court, either as complainants or defendants.
10. There is no ground for the objection founded on the threat of the complainant to renew the claim to the Woodville tract under the purchase of G. R. C. Floyd from Mrs. Jane Breckinridge. The conveyances from G. R. C. Floyd to John Floyd, and thence to R. Breck-inridge, destroy all right in the heirs of G. R. C. Floyd to resuscitate that title. Nor is there any ground of complaint, in this Court, that J. D. Breckinridge was not compelled to account, in his answer, or before a commissioner, for the sale of the Lynch tract, under the *471 act of Assembly before referred to. That matter should have been moved in the Circuit Court.
The decree of the Chancellor is conformable to the foregoing principles, except in three particulars:
First — in not retaining a portion of the distributive interest of G. R. C. Floyd, in the price of the interest of William, as heir of his father, to meet the decree or decrees and judgment in favor of R. Breckinridge, junior, against him, for the benefit, either of J. D. Breck-inridge, if he is entitled to it, or of the distributees of said Robert.
And, second — in proceeding to decree the payment of one sixth of the price of William’s interest in Wood-ville, as heir to his mother, before the heirs of G. R. C. Floyd were made parties to the bill: which errors are embraced in the assignment of errors by J. D. Breck-inridge.
And, third — in crediting the sum acknowledged to have been received at the date of the first deed, of 1817, as a part payment of the forty dollars per acre, for the interest of William, in the Woodville tract, which was to be paid at a future time; which is an error assigned by Floyd’s administrator.
We have not noticed the alleged errors in mere calculation. If they exist in the decree, as rendered, they may be corrected in any future decree.
On the two first errors, the entire decree must be reversed; and the cause is remanded, with instructions to allow the heirs of George R. C. Floyd to be made parties, and for further proceedings, not inconsistent with this opinion.
Breckinridge is entitled to costs on his writ of error; and Floyd’s administrator is entitled to the costs of his cross assignment of errors.
Note. — The record in this case is condemned: 1. because the documents are not put in order with the pleadings in which they are exhibited; 2. they are not referred to in the index; 3. some of them are copied, twive.